Filed 1/24/14  Jajdelski v. Kaplan, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHARLES JAJDELSKI, | D063190 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00095912-CU-WT-CTL) |
| KAPLAN, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lorna Alksne, Judge.  Affirmed.

Aguirre, Morris & Severson, Michael J. Aguirre, Christopher S. Morris and Maria C. Severson for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Nicola T. Hanna, Timothy J. Hatch, James L. Zelenay, Jr., and Jeremy S. Ochsenbein for Defendant and Respondent.

Plaintiff Charles Jajdelski appeals from a judgment in favor of defendant Kaplan, Inc. (Kaplan) after the court sustained Kaplan's demurrer to Jajdelski's first amended

complaint (FAC), without leave to amend, for failure to state a claim under the whistleblower protection provisions of the California False Claims Act (CFCA). (Former Gov. Code, § 12653, repealed and replaced by Stats. 2012, ch. 647, §§ 4 & 5.) Jajdelski contends that the court erred in finding that he did not sufficiently allege (1) actions in furtherance of a false claims action, (2) a reasonable suspicion of a false claim, or (3) a reasonable possibility that Jajdelski's actions would lead to a false claims action. Jajdelski further contends that the court abused its discretion in denying him leave to amend his complaint following this finding. Kaplan argues that the judgment is correct on the grounds stated by the court and on alternative grounds. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Kaplan owns and operates a number of for-profit higher education institutions. Jajdelski was employed by Kaplan as an admissions representative at two such institutions, Maric College in San Diego, California and Heritage College in Las Vegas, Nevada. Kaplan terminated Jajdelski's employment in December 2003.

Following his termination, Jajdelski filed suit against Kaplan in federal court in California on behalf of himself and as qui tam plaintiff on behalf of the United States. Jajdelski alleged causes of action under the federal False Claims Act (31 U.S.C. § 3729), retaliatory termination under the CFCA (former Gov. Code, § 12653), and common law wrongful termination. Following a number of years of litigation, including the transfer of Jajdelski's lawsuit to federal court in Nevada, that court dismissed Jajdelski's federal claims and declined to exercise jurisdiction over Jajdelski's state law claims.

2

Jajdelski then filed this action in superior court.  In his superior court complaint, Jajdelski reasserted his cause of action for retaliatory termination under former Government Code, section 12653.  Jajdelski alleged that he began work for Kaplan as an admissions representative at Maric College in San Diego.  Eight months later, Kaplan transferred Jajdelski to another Kaplan institution, Heritage College in Las Vegas.  Jajdelski "first became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College . . . ."  Following that ceremony, Jajdelski noticed approximately five boxes of Heritage diplomas that had been prepared but not handed out.  A Heritage College department chairperson told Jajdelski that the unused diplomas were for students who did not attend or finish Heritage College programs.  Later, a Heritage College director of education told Jajdelski that half of the prospective students who complete the paperwork to enroll in Heritage College never show up.  Of the other half, a percentage of those students drop out within a seven-day window.  However, Heritage College instructors were required to keep these students' names on their attendance rosters.  Around this time, Jajdelski became aware of one student who attended the college for approximately four months but then dropped out.  Although she had dropped out, Heritage College had given this student "graduated" status.

In addition to these discrepancies, Jajdelski uncovered evidence that Heritage intended to report false job placement data to its accrediting body.  When they became aware of Jajdelski's investigation, Heritage management told Jajdelski that his job would be in jeopardy if he did not drop his concerns.  Jajdelski continued his investigation,

3

though, and reported his concerns about falsification of enrollment, graduation, and placement rates to the United States Department of Education. He also informed Kaplan corporate management of suspicious activities at Heritage.

Soon thereafter, Jajdelski's employment at Heritage was terminated. Although downsizing was cited as a factor, Jajdelski was the only person at Heritage who was terminated, and he had been Heritage's highest-enrolling admissions representative. Jajdelski was told that the decision to terminate him had been made by the same Kaplan officials whom he told of the suspicious activities at Heritage.

Jajdelski gathered his personal items and was escorted out of his office, and to his home, by Kaplan and Heritage management, including a Kaplan regional manager. When Jajdelski arrived home, the regional manager told him, "What the hell did you think you were going to accomplish? We already knew about graduation and placement rates before we purchased the Heritage campus. You should have kept your mouth shut and stayed out of it . . . ."

Kaplan demurred to Jajdelski's complaint. Kaplan argued among other things that the CFCA, including its whistleblower protections, applied only to false claims made to California or its political subdivisions. The court agreed and sustained Kaplan's demurrer on the grounds that Jajdelski had alleged only federal false claims, based on federal educational funds, and not false claims made to California or its political subdivisions. The court, however, granted Jajdelski leave to amend his complaint.

Jajdelski then filed a FAC. Jajdelski's FAC contains additional allegations stemming from Jajdelski's time at Kaplan-owned Maric College in San Diego, prior to his

4

transfer to Heritage College. In his FAC, Jajdelski alleges that he witnessed financial aid personnel at Maric College providing false information to prospective students regarding expected earnings upon graduation from Maric. Jajdelski also witnessed non-English speaking students being assisted with their financial aid forms by Maric representatives, who would sign the forms for students. Jajdelski understood that this assistance was not lawful.

Jajdelski contacted his supervisor about these activities. The supervisor brushed off his concerns and implicitly threatened Jajdelski's job. Jajdelski went to another Maric official, who told Jajdelski that the incidents he witnessed were not isolated but that he should "leave it alone."

Within a week of this conversation, a Kaplan regional director visited Jajdelski. He told Jajdelski that he "needed to listen carefully and understand the severity of the statements that he was making about Kaplan's practices." He also told Jajdelski that he was being reassigned to Heritage College in Las Vegas and that Jajdelski should accept the reassignment if he wanted to keep his job. Jajdelski alleges that this reassignment was in retaliation for his reporting unlawful activity.

In his FAC, Jajdelski also alleges a connection between Maric's practices and educational funds provided by California, rather than the federal government. According to the FAC, enrolled students at Maric could use so-called California Workforce funding, administered through the California Workforce Investment Board, in addition to funds from the federal government directly. Jajdelski alleges that he reported Maric's practices, and the connection to California Workforce funding, to the United States Department of

5

Education at the same time as he reported the suspicious activities that he had witnessed at Heritage College.

Kaplan demurred to the FAC as well. Kaplan argued that the FAC still did not allege any false claims made to California and did not allege any conduct in furtherance of a CFCA action. Kaplan also argued that the FAC was a sham, since Jajdelski's new allegations regarding fraud at Maric College contradicted his previous allegations (also carried over to the FAC) that, among other things, Jajdelski "first became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College . . . ." Finally, Kaplan contended that Jajdelski's FAC was barred by the applicable statute of limitations because it was too factually dissimilar from Jajdelski's prior complaints and thus could not relate back to Jajdelski's initial complaint for statute of limitations purposes.

The court again sustained Kaplan's demurrer. The court found that California Workforce funds could form the basis of a CFCA action, but that Jajdelski had not adequately alleged (1) actions in furtherance of a false claims action, (2) a reasonable suspicion of a false claim, or (3) a reasonable possibility that his actions would lead to a false claims action. The court further found that "plaintiff has not shown there is a reasonable possibility he can cure this defect by further amendment" and denied leave to amend. The court entered judgment against Jajdelski accordingly, and he appeals.

DISCUSSION

I

*Standard of Review*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the "reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

"[W]e may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)

7

II

*Contradictory Allegations in Jajdelski's First Amended Complaint*

Jajdelski contends that the court erred in sustaining Kaplan's demurrer on the grounds that Jajdelski's FAC failed to allege facts sufficient to state a claim for retaliation under former Government Code, section 12653. As an initial matter, we must consider whether to accept the allegations of the FAC as true for purposes of this appeal, as Jajdelski contends, or whether to disregard them as "sham" allegations, as Kaplan urges.[1]

It is well established that "when reviewing a judgment entered following the sustaining of a demurrer without leave to amend, the appellate court must assume the truth of the factual allegations of the complaint. [Citation.] However, an exception exists where a party files an amended complaint and seeks to avoid the defects of a prior complaint either by omitting the facts that rendered the complaint defective or by pleading facts inconsistent with the allegations of prior pleadings. [Citations.] In these circumstances, the policy against sham pleading permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency. If he fails to do so the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint." (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384 (*Owens*); see also *Deveny v. Entropin, Inc.* (2006)

---

[1] In a footnote in his opening brief, Jajdelski "requests the court take judicial notice of [his] filings as set forth in the Register of Actions pursuant to Evidence Code section 452." We decline to consider Jajdelski's request because he has not complied with the California Rules of Court, rule 8.252, governing requests for judicial notice in this court. (*Canal Ins. Co. v. Tackett* (2004) 117 Cal.App.4th 239, 243.)

8

139 Cal.App.4th 408, 425.) " 'A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.' " (*McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1491.)

Here, Jajdelski's original superior court complaint alleged as follows: "Plaintiff *first became aware* of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College where he served as Admissions Representative following a then-recent transfer from Kaplan's Maric College in San Diego, California." (Italics added.) This language is consistent with the substantive allegations of his original superior court complaint, which rely on alleged fraudulent activity at Heritage College as the basis of his cause of action for retaliation under the CFAC.[2]

Jajdelski's FAC, however, alleges that Jajdelski was personally aware of fraud at Maric College, reported it to his superiors there, and was consequently subject to adverse employment action there, all prior to the October 2003 graduation ceremony at Heritage College. These allegations did not appear in his original superior court complaint, nor do they appear in any of Jajdelski's five federal complaints in the record.

Kaplan argues that these allegations in the FAC are factually inconsistent with the allegations in his original superior court complaint and his prior federal complaints. Jajdelski responds that the allegations in the FAC are not inconsistent, but he does not

---

[2]    Jajdelski's operative federal complaint contains nearly the same allegation: "Relator first became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College . . . ."

9

explain how. In his opening brief, Jajdelski contends, "First, that 'Appellant became aware of fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College' is not contradicted by the fact that Appellant complained of fraud before his transfer. . . .[3] For what Appellant told his supervisors he witnessed in California, he was assigned to a position that would require his weekly commute hundreds of miles. For what Appellant witnessed in Nevada and California, he was terminated. That is no contradiction, but rather a progressive service [*sic*] of adverse employment acts by a company desperate to keep its government-funded gravy train in place." Jajdelski does not acknowledge the plain meaning of his allegation that he "*first* became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College" and therefore denies any discrepancy. (Italics added.) Jajdelski's reply on this issue is similarly devoid of reasoning. Jajdelski cites no legal authority, either in his opening brief or on reply, in support of his argument that the FAC's allegations are not a sham.

The progression of Jajdelski's pleadings is similar to the situation encountered by the court in *Owens*. There, the plaintiff initially alleged that he was injured on a public roadway. After the trial court sustained defendants' demurrers on the grounds that they had no duty towards plaintiff in that location, plaintiff added "an allegation that plaintiff was on defendants' premises when he was injured." (*Owens, supra*, 198 Cal.App.3d p. 383.) The trial court disregarded this inconsistent pleading as a sham, and the *Owens*

---

3    Jajdelski misstates the allegation in question, omitting the material term "first" from his quotation, among other things.

court affirmed. (*Id.* at p. 384.) Here, in his original superior court complaint, Jajdelski alleged that he "first became aware of a fraud" while employed at Heritage College in Las Vegas. Kaplan's demurrer to the original complaint was sustained because such allegations did not involve false claims made to California, or its political subdivisions, and thus could not state a claim for retaliation under the CFAC. Jajdelski then alleged, in his FAC, that the fraud he witnessed at Heritage College in Las Vegas was not his first awareness of a fraud. Instead, Jajdelski allegedly was aware of prior fraud at Maric College in California, reported that fraud to his superiors, and was subject to adverse employment action based on reporting such fraud.

We conclude that the FAC's allegations of fraud at Maric College, Jajdelski's awareness thereof, and Kaplan's retaliation therefor contradict Jajdelski's prior allegation that he "first became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College . . . ." We also conclude that Jajdelski has provided no adequate explanation for the inconsistency in his pleadings. We will therefore disregard the inconsistent allegations in assessing the sufficiency of Jajdelski's FAC. (*Owens, supra*, 198 Cal.App.3d at p. 384; *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 ["[A]ny inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations."].)

III

*Protected Activity Under the California False Claims Act*

"To establish a prima facie case, a plaintiff alleging retaliation under the CFCA must show: '(1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity.' [Citations.]" (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 455-456.) "This code section, characterized as the whistleblower protection provision of the CFCA, is construed broadly. [Citations.]" (*Kaye v. Board of Trustees of the San Diego County Public Law Library* (2009) 179 Cal.App.4th 48, 59 (*Kaye*); see also *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 725.)

The issue here is whether Jajdelski's FAC adequately alleges protected activity under the CFCA. "Generally, to constitute protected activity under the CFCA, the employee's conduct must be in furtherance of a false claims action. [Citation.] The employee does not have to file a false claims action or show a false claim was actually made; however, the employee must have reasonably based suspicions of a false claim and it must be reasonably possible for the employee's conduct to lead to a false claims action. [Citations.]" (*Kaye, supra*, 179 Cal.App.4th at p. 60.)

The CFCA defines a " '[c]laim,' " in relevant part, as "any request or demand . . . for money, property, or services . . . that . . . [¶] . . . [i]s presented to an officer, employee, or agent of the state or of a political subdivision." (Gov. Code, § 12650, subd. (b)(1)(A).) Kaplan argues that protected activity under the whistleblower

12

protection provisions of the CFCA must be similarly limited.[4]  We agree.  In order to allege protected activity under the CFCA, an employee must state facts showing that his or her activity was in furtherance of a CFCA action, i.e., an action predicated on funds wrongfully claimed from the state or a political subdivision thereof.  (See former Gov. Code, § 12653, subd. (b); see also *Hoefer v. Fluor Daniel, Inc.* (C.D.Cal. 2000) 92 F.Supp.2d 1055, 1056.)

Jajdelski contends that his FAC sufficiently alleges protected activity in furtherance of a CFCA action based on his investigation of fraud at Maric College, which could have lead to false claims by Kaplan for California Workforce funding.[5]  However, these are the same allegations that we disregard as inconsistent with Jajdelski's prior pleading that he "first became aware of a fraud at and around the time of the October 2003 graduation ceremony for Kaplan Heritage College . . . ."  (See pt. II, *ante*.)  Because Jajdelski does not point to any other allegations to support his claim, we conclude that Jajdelski's FAC fails to allege facts sufficient to state a claim for retaliation under former Government Code, section 12653.

---

[4]  Jajdelski does not provide any contrary argument or authority.

[5]  The parties dispute whether California Workforce funds can constitute "state funds" under the CFAC.  (See former Gov. Code, § 12650, subd. (b)(9).)  Even assuming *arguendo* that California Workforce funds do constitute "state funds," as Jajdelski urges, our analysis is unchanged.  Likewise, in light of our conclusion, we need not consider Kaplan's alternative argument that the statute of limitations bars Jajdelski's claim.

IV

*Leave to Amend*

Jajdelski contends that the trial court should have granted him leave to file a further amended complaint. "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 967.) However, Jajdelski " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Here, Jajdelski has requested leave to "clarify his arguments" and "adorn [his] current allegations." Such generic averments are insufficient. To the extent that Jajdelski offers to further explain the "statutory scheme" and "checks and balances" of California Workshare funds, or the "practical effects" of his transfer from San Diego to Las Vegas, such amendments would still not address the deficiencies of the FAC. Finally, Jajdelski's claim that he did not have the opportunity to conduct discovery is unfounded (see *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 798; *Mattco Forge, Inc. v. Arthur Young & Co*. (1990) 223 Cal.App.3d 1429, 1436), and does not relieve him of the burden of "show[ing] in what manner he can amend his complaint" in any event. (See *Goodman*, at p. 349.) Because Jajdelski has not shown a reasonable possibility that the defects in his FAC can be cured by amendment, he has not established that it was an abuse of discretion to deny leave to amend.

14

DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.